**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**LOUISVILLE DIVISION**
**CIVIL ACTION NO. 3:23-cv-00582-CHL**

**SUNSHINE K.,[1]**                                                                                     **Plaintiff,**

**v.**

**COMMISSIONER OF SOCIAL SECURITY,**                                         **Defendant.**

**MEMORANDUM OPINION AND ORDER**

Before the Court is the Complaint filed by Plaintiff, Sunshine K. ("Claimant"). Claimant seeks judicial review of the final decision of the Commissioner of Social Security ("the Commissioner"). (DN 1.) Claimant and the Commissioner each filed a Fact and Law Summary, and Claimant also filed a reply brief. (DNs 11, 12, 14, 15.) The Parties have consented to the jurisdiction of a Magistrate Judge to enter judgment in this case with direct review by the Sixth Circuit Court of Appeals in the event an appeal is filed. (DN 7.) Therefore, this matter is ripe for review.

For the reasons set forth below, the final decision of the Commissioner is **REVERSED**, and this matter is **REMANDED**, pursuant to sentence four of 42 § U.S.C. 405(g), to the Commissioner to conduct additional proceedings to remedy the herein identified defects in the original proceedings.

**I.   BACKGROUND**

On January 13, 2021, Claimant applied for disability insurance benefits under Title II ("DIB"). (R. at 18, 143, 153-55, 269-75.) Her application alleged disability beginning on December 19, 2020, due to fibromyalgia, chronic fatigue, and manic depression. (*Id.* at 18, 143,

---

[1] Pursuant to General Order 23-02, the Plaintiff in this case is identified and referenced solely by first name and last initial.

155.) Claimant's application was denied initially and again on reconsideration. (*Id.* at 172-76, 178-82.)

At Claimant's request, Administrative Law Judge ("ALJ") Greg Holsclaw ("the ALJ") conducted a hearing on Claimant's application on April 26, 2022. (*Id.* at 87-142, 183-84.) Claimant attended the hearing by telephone with her non-attorney representative. (*Id.* at 89, 92, 166-69, 216-20, 237.) An impartial vocational expert also participated in the hearing. (*Id.* at 89.) During the hearing, Claimant testified to the following. She lives with her fiancé and has three cats and a small dog that she feeds and cares for with some assistance from her fiancé; he assists with cleaning the litterbox a couple of times a week though she does it approximately five times a week. (*Id.* at 97-99.) She takes the dog outside daily for periods of no more than two minutes at a time. (*Id.* at 99.) She relies on her husband to do the cooking, and "most of the time, until he's home, [she] won't eat much of anything." (*Id.* at 130-31.) She testified that while she can handle the pain from her fibromyalgia, she struggles with weakness that fluctuates through the day and affects her cognitive abilities causing trouble with her memory and thinking straight. (*Id.* at 113-14.) Her pain is in her whole body including her joints, muscles, feet, legs, and head, and she sometimes feels like her skin is burning. (*Id.* at 114.) Her pain in her legs radiates down into her feet and up to her thighs and back. (*Id.* at 127.) The more she does, the weaker she gets. (*Id.* at 114.) Her fatigue feels like there is lead in her blood. (*Id.* at 127.) She has tried to exercise, but it gets too be too much and she stops; she has never been able to exercise for longer than thirty minutes at a time. (*Id.* at 115-16.) Her hands and feet stay cold, and her feet go numb when she exercises. (*Id.* at 126.) She is not taking any medication for pain because what was recommended wasn't compatible with her depression medication. (*Id.* at 116.) Her depression medication helps her get through the day, and if she misses a day, "it's obvious." (*Id.* at 129.) She has seen a

therapist for her psychological impairments but is looking for a new one. (*Id.* at 117.) She sometimes struggles to remember her fiancé's name despite them being together for four years. (*Id.* at 118.) She gets directions mixed up and has trouble making decisions. (*Id.*) She forgets things; she'll put her dog out on the porch and forget he is out there. (*Id.* at 119.) She doesn't really go out much anymore. (*Id.* at 121.)

Due to new evidence received after the first hearing, the ALJ held a supplemental hearing on August 16, 2022. (*Id.* at 43-44, 38-80.) Claimant again attended the hearing by telephone with her non-attorney representative; a new impartial vocational expert also participated in the hearing. (*Id.* at 40.) During the supplemental hearing, Claimant testified to the following. She has moved to a new place that doesn't have stairs in part so she could get around easier. (*Id.* at 47-48.) She lives with her mother and her husband; she got married since the last hearing. (*Id.* at 48, 53.) She doesn't do much for her mother but will take her mother to the doctor if her mother has an appointment on a day she can drive. (*Id.* at 49.) She can drive when she is weak but not when she's having a bad cognitive day. (*Id.* at 62.) She was not receiving any treatment for her impairments and had only ever been offered some help with pain; she was told there was nothing that could be done for her weakness and cognitive decline. (*Id.* at 53-54.) Her pain feels like it is in her bones. (*Id.* at 63.) She has been having increasing problems with her right knee and has done physical therapy though she hasn't noticed any improvement. (*Id.* at 56.) She uses a cane on her bad days to help her with balance if she stands still. (*Id.* at 57.) Her body dysmorphia makes her have trouble leaving the house. (*Id.* at 58.) When she was working she would deal with it by trying not to look in mirrors or directly at herself and trying not to think about people seeing her in public. (*Id.* at 59.) Therapy was helping, but she hasn't had a session since December. (*Id.* at 59-60.)

The ALJ issued an unfavorable decision on September 26, 2022. (*Id.* at 15-35.) Applying the five-step sequential evaluation process promulgated by the Commissioner to determine whether an individual is disabled, the ALJ made the following findings. First, the Claimant had not engaged in substantial gainful activity since December 19, 2020, her alleged onset date. (*Id.* at 20.) Second, Claimant had the following severe impairments: degeneration of the cervical spine, degeneration of the right knee, fibromyalgia with chronic weakness and fatigue, depression, anxiety, and borderline personality disorder. (*Id.*) Third, Claimant did not have an impairment or combination of impairments that met or medically equaled any of the listed impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1. (*Id.* at 21.) Fourth, Claimant had the residual functional capacity ("RFC") to perform light work with the following exceptions:

> no lifting/carrying more than 20 pounds occasionally, 10 pounds frequently; no standing/walking more than six hours out of an eight-hour day; no sitting more than six hours out of an eight-hour day; can do unlimited pushing/pulling up to the exertional limitations; no more than frequent balancing, no more than occasional stooping, kneeling, crouching, crawling or climbing ramps or stairs, but no climbing ladders, ropes or scaffolds; no work in areas of concentrated full body vibration; no work around dangerous, moving machinery or unprotected heights; can understand, remember and carry out simple instructions; no more than occasional interaction with co-workers, supervisors, and the general public; no more than occasional changes in the workplace setting.

(*Id.* at 24.) Additionally at step four, the ALJ found that Claimant was able to perform her past relevant work as an office helper because that work did not require the performance of work-related activities precluded by Claimant's RC. (*Id.* at 29.) Fifth, the ALJ found in the alternative that, considering Claimant's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Claimant could perform. (*Id.*) The ALJ concluded that Claimant was not under a disability from December 19, 2020, through the date of his decision. (*Id.* at 30.)

Claimant subsequently requested an appeal to the Appeals Council, which denied her request for review on September 13, 2023. (*Id.* at 1-6, 266-68.) At that point, the ALJ's decision became the final decision of the Commissioner. *See* 20 C.F.R. § 422.210(a) (2024); *see also* 42 U.S.C. § 405(h) (discussing finality of the Commissioner's decision). Pursuant to 20 C.F.R. § 422.210(c), Claimant is presumed to have received that decision five days later. 20 C.F.R. § 422.210(c). Accordingly, Claimant timely filed this action on November 8, 2023. (DN 1.)

## II.  DISCUSSION

The Social Security Act authorizes payments of DIB to persons with disabilities. *See* 42 U.S.C. §§ 401-434. An individual shall be considered "disabled" if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months." 42 U.S.C. § 423(d)(1)(A); *see* 20 C.F.R. § 404.1505(a) (2024).

### A.  Standard of Review

The Court may review the final decision of the Commissioner but that review is limited to whether the Commissioner's findings are supported by "substantial evidence" and whether the Commissioner applied the correct legal standards. 42 U.S.C. § 405(g); *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997). "Substantial evidence" means "more than a mere scintilla"; it means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The Court must "affirm the Commissioner's decision if it is based on substantial evidence, even if substantial evidence would also have supported the opposite conclusion." *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 374 (6th Cir. 2013); *see Smith v. Sec'y of Health & Hum. Servs.*, 893 F.2d 106, 108 (6th Cir. 1989) (holding that

if the court determines the ALJ's decision is supported by substantial evidence, the court "may not even inquire whether the record could support a decision the other way"). However, "failure to follow agency rules and regulations" constitutes lack of substantial evidence, even where the Commissioner's findings can otherwise be justified by evidence in the record. *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011).

### B. Five-Step Sequential Evaluation Process for Evaluating Disability

The Commissioner has promulgated regulations that set forth a five-step sequential evaluation process that an ALJ must follow in evaluating whether an individual is disabled. 20 C.F.R. § 404.1520 (2024). In summary, the evaluation process proceeds as follows:

(1) Is the claimant involved in substantial gainful activity? If the answer is "yes," the claimant is not disabled. If the answer is "no," proceed to the next step.

(2) Does the claimant have a medically determinable impairment or combination of impairments that satisfies the duration requirement[2] and significantly limits his or her physical or mental ability to do basic work activities? If the answer is "no," the claimant is not disabled. If the answer is "yes," proceed to the next step.

(3) Does the claimant have an impairment that meets or medically equals the criteria of a listed impairment within 20 C.F.R. Part 404, Subpart P, Appendix 1? If the answer is "yes," the claimant is disabled. If the answer is "no," proceed to the next step.

(4) Does the claimant have the RFC to return to his or her past relevant work? If the answer is "yes," then the claimant is not disabled. If the answer is "no," proceed to the next step.

(5) Does the claimant's RFC, age, education, and work experience allow him or her to make an adjustment to other work? If the answer is "yes," the claimant is not disabled. If the answer is "no," the claimant is disabled.

20 C.F.R. § 404.1520(a)(4).

---

[2] To be considered, an impairment must be expected to result in death or have lasted/be expected to last for a continuous period of at least twelve months. 20 C.F.R. § 404.1509 (2024).

The claimant bears the burden of proof with respect to steps one through four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). However, the burden shifts to the Commissioner at step five to prove that other work is available that the claimant is capable of performing. *Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 423 (6th Cir. 2008). The claimant always retains the burden of proving lack of RFC. *Id.*; *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 392 (6th Cir. 1999).

### C.   Claimant's Contentions

Claimant made three arguments. First, she argued that the ALJ's analysis of the opinion of consultative examiner Robert R. Morley, MSN, AGPCNP-BC, was erroneous and did not comply with the ALJ's obligations under 20 C.F.R. § 404.1520c. (DN 11; DN 12, at PageID # 890, 896-900; DN 15, at PageID # 938-40.) Second, she argued that the ALJ's RFC determination did not adequately account for or appear to be based on a proper understanding of the nature of Claimant's fibromyalgia. (DN 11; DN 12, at PageID # 890, 901-06; DN 15, at PageID # 938, 941.) Third, she argued that the ALJ's RFC analysis did not sufficiently discuss Claimant's daily activities. (DN 11; DN 12, at PageID # 890, 906-11; DN 15, at PageID # 938, 942-43.) Because the Court concludes that remand is appropriate on Claimant's second and third arguments, it does not reach the first.

Claimant's second and third arguments both relate to the ALJ's determination of her RFC. An ALJ's RFC finding is the ALJ's ultimate determination of what a claimant can still do despite his or her physical and mental limitations. 20 C.F.R. §§ 404.1545(a)(1), 404.1546(c) (2024). The ALJ bases his or her determination on all relevant evidence in the case record. 20 C.F.R. § 404.1545(a)(1)-(4). Thus, in making his or her determination of a claimant's RFC, an ALJ must necessarily evaluate the persuasiveness of the medical opinions in the record and assess the

claimant's subjective allegations. 20 C.F.R. §§ 404.1520c, 404.1529 (2024). Here, the ALJ found that Claimant could perform a range of light work with certain other exertional and non-exertional limitations specified in his decision. (R. at 24.) But Claimant argued that the ALJ's RFC finding did not properly account for her fibromyalgia and was not based on a proper analysis of her daily activities. These two arguments are ultimately intertwined given the nature of fibromyalgia.

Fibromyalgia "is a complex medical condition characterized primarily by widespread pain in the joints, muscles, tendons, or nearby soft tissues that has persisted for at least [three] months." SSR 12-2p, 77 Fed. Reg. 43640, 43641 (July 25, 2012). Its "cause or causes are unknown, there is no cure, and, of greatest importance to disability law, its symptoms are entirely subjective." *Sarchet v. Chater*, 78 F.3d 305, 306 (7th Cir. 1996). Individuals with fibromyalgia "present no objectively alarming signs, " *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 243 (6th Cir. 2007), and "[t]here are no objective tests which can conclusively confirm the disease." *Preston v. Sec'y of Health & Hum. Servs.*, 854 F.2d 815, 818 (6th Cir. 1988) (per curiam). Fibromyalgia is diagnosed by using a "trigger point" test that involves the "testing of a series of focal points for tenderness" while also "ruling out of other possible conditions through objective medical and clinical trials." *Rogers*, 486 F.3d at 244. Objective test results, including imaging results, and observations are of little relevance to determine the existence pr severity of fibromyalgia. *Preston*, 854 F.2d at 820 (noting that CT scans, x-rays, and other standard clinical tests and observations relied upon to "detect neurological and orthopaedic disease were of little aid or relevance"). "Rather, fibromyalgia patients 'manifest normal muscle strength and neurological reactions and have a full range of motion.' " *Rogers*, 486 F.3d at 244 (quoting in part *Preston*, 854 F.2d at 820). In light of this, the Sixth Circuit has recognized that in disability cases, fibromyalgia poses "unique evidentiary difficulties." *Id.* at 245 (citing *Preston*, 854 F.2d at 820). "[D]isability claims related

8

to fibromyalgia are related to the symptoms associated with the condition—including complaints of pain, stiffness, fatigue, and inability to concentrate—rather than the underlying condition itself." *Kalmbach v. Comm'r of Soc. Sec.*, 409 F. App'x 852, 862 (6th Cir. 2011) (citing *Rogers*, 486 F.3d at 247). Notwithstanding the unusual nature of an impairment of fibromyalgia, the mere "diagnosis of fibromyalgia does not automatically entitle [a claimant] to disability benefits." *Vance v. Comm'r of Soc. Sec.*, 260 F. App'x 801, 806 (6th Cir. 2008). "Some people may have such a severe case of fibromyalgia as to be totally disabled from working, but most do not and the question is whether [a claimant] is one of the minority." *Sarchet*, 78 F.3d at 307 (citing Michael Doherty & Adrian Jones, "Fibromyalgia Syndrome (ABC of Rheumatology)," 310 British Med. J. 386 (1995), and *Preston*, 854 F.2d at 818) (internal citations omitted).

To address some of these issues, the Social Security Administration ("SSA") has published SSR 12-2p, which "provides guidance on how [to] develop evidence to establish that a person has a medically determinable impairment (MDI) of fibromyalgia (FM) and how [to] evaluate FM in disability claims and continuing disability reviews under titles II and XVI of the Social Security Act." SSR 12-2p, 77 Fed. Reg. at 43641. The vast majority of the SSR addresses how and based on what evidence an ALJ should determine that an individual has a medically determinable impairment of fibromyalgia, including a description of the specific diagnostic criteria that must be present. *Id.* at 43641-43. The SSR provides that "[o]nce [an ALJ] establish[es] that a person has a[] [medically determinable impairment] of [fibromyalgia], [the ALJ] will consider it in the sequential evaluation process to determine whether the person is disabled." *Id.* at 43643. Specifically as to an ALJ's RFC analysis, the SSR instructs the ALJ, as in all cases, to base his or her "RFC assessment on all relevant evidence in the case record," but it also specifies that "[f]or a person with [fibromyalgia], [the ALJ] will consider a longitudinal record whenever possible

9

because the symptoms of [fibromyalgia] can wax and wane so that a person may have 'bad days and good days.' " *Id.* at 43644. As to how an ALJ should consider a claimant's statements about his or her symptoms, the SSR provides that an ALJ should "follow the two-step process set forth in [SSA's] regulations and in SSR 96-7p." *Id.* at 43643, 43643 n.17 (citing 20 C.F.R. §§ 404.1529(b)-(c), 416.929(b)-(c)). SSR 96-7p was subsequently rescinded by the SSA after SSR 12-2p's publication and replaced by SSR 16-3p.[3]  SSR 16-3p, 81 Fed. Reg. 14166 (March 16, 2016); SSR 16-3p, 82 Fed. Reg. 49462 (Oct. 25, 2017) (revising SSR 16-3p as initially published to its current operative form). As the Sixth Circuit has explained, "SSR 12–2p merely provides guidance on how to apply pre-existing rules when faced with a claimant asserting disability based on fibromyalgia." *Luukkonen v. Comm'r of Soc. Sec.*, 653 F. App'x 393, 399 (6th Cir. 2016).

Claimant argued that the ALJ failed to comply with SSR 12-2p and that his legal error justifies remand. (DN 11; DN 12, at PageID # 890, 901-06; DN 15, at PageID # 938, 941.) The Court disagrees that any such legal error occurred. As set forth above SSR 12-2p is primarily concerned with determining whether a claimant's fibromyalgia is a medically determinable severe impairment. The ALJ found at step two that Claimant's fibromyalgia was a severe impairment. (R. at 20.) Thus, all SSR 12-2p required the ALJ to do was consider Claimant's fibromyalgia at the remaining steps of the sequential evaluation process. *See, e.g.*, *Eltzroth v. Comm'r of Soc. Sec.*, No. 2:20-CV-6558, 2021 WL 5917126, at *6 (S.D. Ohio Dec. 14, 2021), *report and recommendation adopted*, No. 2:20-CV-6558, 2022 WL 225527, at *1 (S.D. Ohio Jan. 26, 2022). The ALJ purported to do so, and the Court is unconvinced that Claimant has demonstrated any specific error in the ALJ's application of SSR 12-2p given the generality of the principles therein

---

[3] SSR 96-7p required an ALJ to evaluate the Claimant's credibility. SSR 96-7p, 61 Fed. Reg. 34483 (July 2, 1996). SSR 16-3p eliminates references to credibility and instead requires an ALJ to evaluate a claimant's statements without reaching the idea of a claimant's character for truthfulness. SSR 16-3p, 82 Fed. Reg. at 49462 (Oct. 25, 2017).

as to the ALJ's RFC determination. Instead, the Court agrees with the Claimant's broader contention that the ALJ's RFC did not appropriately account for Claimant's fibromyalgia or the nature of fibromyalgia generally.

Here, at step four, the ALJ found Claimant to have the RFC to perform light work with certain other exertional and non-exertional limitations. (R. at 24.) He limited Claimant to no more than occasionally lifting or carrying more than twenty pounds, frequently lifting or carrying more than ten pounds, standing or walking for more than six of eight hours, sitting for more than six of eight hours, frequent balancing, occasional stooping, occasional kneeling, occasional crouching, occasional crawling, and occasional climbing of ramps and stairs. (*Id.*) He excluded Claimant from climbing ladders, climbing ropes, climbing scaffolds, working in areas of concentrated full body vibration, working around dangerous moving machinery, and working around unprotected heights. (*Id.*) He found that Claimant could understand, remember, and carry out simple instructions; could not more than occasionally interact with co-workers, supervisors, and the general public; and could tolerate only occasional changes in the workplace. (*Id.*) In support of these restrictions, he summarized Claimant's hearing testimony, the medical evidence, and the opinion evidence of record. (*Id.* at 24-29.)

But the ALJ's summary of the medical evidence of record focused nearly entirely on objective findings and imaging records without any recognition of the lack of relationship between that evidence and fibromyalgia limitations. The ALJ's discussion frequently contrasted the Claimant's complaint of disabling pain or fatigue from her fibromyalgia with the "normal" findings from the same visit in which Claimant made the complaints. For example, the ALJ noted that during a late July 2018 visit Claimant complained of constant fatigue but emphasized that she showed normal strength and gait on examination. (*Id.* at 25 (citing *id.* at 373-74).) The ALJ noted

11

that during an October 17, 2019, consultative examination, Claimant complained of chronic fatigue associated with her fibromyalgia as well as pain in her hips, feet, shoulders, and arms but emphasized that on examination the examiner documented "intact reflexes and sensation[] and full motor strength" and "normal range of motion in all joints except" in Claimant's lumbar spine. (*Id.* at 25 (citing *id.* at 391).) The ALJ noted that during an April 2021 visit with a rheumatologist, Claimant reported that her body was painful two days per week but that on examination, Claimant had "full range of motion of all joints including the neck and spine, no tenderness of any joint, full power, and intact sensation." (*Id.* at 26 (citing *id.* at 588-93, 589).) These examples and the others like it in the ALJ's decision do not support a lack of limitations related to Claimant's fibromyalgia. As the Sixth Circuit has explained, "[T]he absence of objective medical evidence to substantiate the diagnosis of fibromyalgia or its severity is basically irrelevant." *Kalmbach*, 409 F. App'x at 864; *Rogers*, 486 F.3d at 243; *Preston*, 854 F.2d at 820 (noting that objective tests are of little relevance in determining the existence or severity of fibromyalgia). *See also Swain v. Comm'r of Soc. Sec.*, 297 F. Supp. 2d 986, 990 (N.D. Ohio 2003) ("Physical examinations usually yield normal findings in terms of full range of motion, no joint swelling, normal muscle strength, and normal neurological reactions."); *Sarchet*, 78 F.3d at 308 ("The administrative law judge also depreciated the gravity of [claimant]'s fibromyalgia because of the lack of any evidence of objectively discernible symptoms, such as a swelling of the joints. Since swelling of the joints is not a symptom of fibromyalgia, its absence is no more indicative that the patient's fibromyalgia is not disabling than the absence of headache is an indication that a patient's prostate cancer is not advanced."). Likewise, the ALJ emphasized in his decision that imaging records of Claimant's brain, right knee, and spine were largely unremarkable except that the x-ray of Claimant's right knee showed early moderate patellofemoral compartment degenerative changes of the knee and

increased patellofemoral tilt. (R. at 25 (citing *id.* at 383-84) (noting that an August 2019 MRI of Claimant's brain was normal and did not show any evidence of demyelinating disease); *id.* at 25 (citing *id.* at 403-05, 407-11, 514-16, 519-21) (noting that July 2020 MRIs of Claimant brain and c-spine were unremarkable); *id.* at 25 (citing *id.* at 546, 565, 568) (summarizing results of x-ray of Claimant's right knee).) But as with the objective test results, the Sixth Circuit has explained that imaging results also don't demonstrate the existence or severity of a claimant's fibromyalgia. *Rogers*, 486 F.3d at 243 (quoting *Preston*, 854 F.2d at 820) ("CT scans, X-rays . . . are not highly relevant in diagnosing [fibromyalgia] or its severity."); *Kalmbach*, 409 F. App'x at 863-64. Thus, the Court agrees with Claimant that the ALJ's summary of the medical evidence focused on evidence irrelevant to the issue of whether Claimant's fibromyalgia caused disabling functional limitations.

It also appears that at times, the ALJ stretched his interpretation of the medical evidence too far. In discussing an April 2021 physical therapy daily treatment note, the ALJ stated, "[Claimant] indicated that physical therapy helped her knee pain as it remained mild since her initial exam." (R. at 26 (citing *id.* at 768).) But the actual physical therapy note merely stated, "[Claimant] feels that her knee pain has been mild since her [initial evaluation]," without any explicit connection of that mild pain to her physical therapy treatment. (*Id.* at 768.) Elsewhere in the same record, Claimant reported that her fibromyalgia had been worse in the past few weeks, including "numerous flare ups that [ ] lasted 1-3 days at time," and that some of the stretches in her home exercise program "seemed to trigger her pain." (*Id.*) Thus, the ALJ's discussion misrepresented the content of the record. In discussing the July 2021 consultative examination of Claimant, the ALJ emphasized the examiner's note in his "neurological" findings section that "she displayed submaximal voluntary effort with strength testing" but did not include details regarding

13

several other places where the examiner reported Claimant experiencing pain or tenderness that would seem to the Court to explain any lack of effort. (*Id.* at 26 (citing *id.* at 696-702).) For example, the examiner noted that he could not perform palpation on Claimant's elbows, wrists, or shoulders "due to tenderness to touch in the area"; that he was only able to "tap [Claimant's left] wrist before she jerk[ed] away due to pain" and he did not even know if he made contact with the right wrist before "the test was discontinued due to pain"; that on examination there was "tenderness in the left hand, although [Claimant] move[d] and pull[ed] away and [he] really c[ouldn't] technically palpate the joints themselves"; and that he could not palpate Claimant's feet, shins, or knees due to tenderness. (*Id.* at 698.) The ALJ did ultimately acknowledge that Claimant "had multiple tender points" during the evaluation, but this summation is less than fulsome and leaves a false impression that Claimant attempted to sabotage the examination findings when in reality the examination supported that she was limited by her pain. Both of these examples, as well as the overall emphasis in the ALJ's decision on objective findings, leave the Court concerned that the ALJ was not focused on the true nature of Claimant's fibromyalgia and its associated limitations in crafting her RFC.

This error is compounded by the ALJ's stated reasons for rejecting Claimant's statements about her limitations as required by SSR 16-3p and 20 C.F.R § 404.1529. 20 C.F.R. § 404.1529 provides that when forming an RFC, an ALJ must assess the claimant's subjective allegations regarding his or her symptoms. 20 C.F.R. § 404.1529(a). It notes that a claimant's statement that he or she is experiencing pain or other symptoms will not, taken alone, establish that he or she is disabled; there must be objective medical evidence that show the existence of a medical impairment that could reasonably be expected to give rise to the pain and/or other symptoms alleged. *Id.* If the ALJ finds that there is a medically determinable impairment that could

14

reasonably be expected to produce the claimant's symptoms, the ALJ must then assess the intensity and persistence of a claimant's symptoms to determine how those symptoms limit the claimant's capacity for work. 20 C.F.R. § 404.1529(c)(1). In doing so, the ALJ should consider a number of factors including a claimant's daily activities; the location, duration, frequency, and intensity of a claimant's pain or other symptoms; any precipitating or aggravating factors; the type, dosage, effectiveness, and side effects of claimant's medications; and any other measures a claimant may use to alleviate pain or other symptoms. 20 C.F.R. § 404.1529(c)(3); *see also Rogers*, 486 F.3d at 247 (citing 20 C.F.R. § 416.929). The regulations only require an ALJ to *consider* the pertinent factors; they do not require the ALJ to discuss all the factors in his or her opinion. *See Dutkiewicz v. Comm'r of Soc. Sec.,* 663 F. App'x 430, 433 (6th Cir. 2016) ("The ALJ was not required to explicitly discuss [claimant]'s work history when assessing his credibility . . . ."). However, the ALJ's decision "must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." SSR 16-3p, 82 Fed. Reg. at 49467.

Here, the ALJ found that while Claimant's impairments could reasonably be expected to cause her symptoms, "[C]laimant's statements concerning the intensity, persistence, and limiting effects of these symptoms [we]re not entirely consistent with the medical evidence and other evidence in the record." (R. at 25.) He then later explained that this conclusion was based on Claimant's conservative treatment for her impairments and her normal examination findings, writing:

> As for the claimant's statements about the intensity, persistence, and limiting effects of his or her symptoms, they are inconsistent because treatment for the claimant's allegedly debilitating conditions has been sparse. What treatment the claimant has received has been conservative and routine with few if any

15

>recommendations for pain management, surgical intervention, inpatient care, or other more aggressive treatment options that would be expected for limitations of the degree alleged. The claimant has alleged disability based on a combination of impairments but testified that she is limited primarily by her fibromyalgia symptoms, particularly in her legs. However, most recent physical exams conducted at UK Rheumatology in April 2021 showed the claimant to have full range of motion of all joints including the neck and spine, no tenderness of any joint, full power, and intact sensation. The claimant had a normal gait (Exhibit 8F/2). She had no swelling of any joint and no tender joints. MRI exams of her brain have consistently showed no acute intracranial abnormality (Exhibit 2F, 5F, 6F). Likewise, x-ray of the right knee showed only mild medial compartmental and early moderate patellofemoral component degenerative changes with increased patellofemoral tilt (Exhibit 7F/13, 7F/32, and 7F/35). Physical therapy notes indicated that physical therapy helped her knee pain as it remained mild since her initial exam (Exhibit 14F/57). Similarly on April 26, 2021, she was noted to have minimal discomfort in her knees (Exhibit 13F/38-41).

(*Id.* at 26 (citing *id.* at 379-88, 400-11, 412-533, 546, 565 568, 589, 749-52, 768).) Neither of these reasons are persuasive as to Claimant's fibromyalgia. The Court has already explained above why objective findings are not a reason to reject the severity or existence of a Claimant's fibromyalgia. But a "generalization of 'conservative treatment' is [also] irrelevant to whether [a claimant]'s fibromyalgia [i]s severe enough to be completely disabling." *Huffman v. Saul*, No. 5:19-CV-449-CHB, 2020 WL 6937441, at *7 (E.D. Ky. Nov. 24, 2020). The Sixth Circuit has stated that "more 'aggressive' treatment is not recommended for fibromyalgia patients." *Kalmbach*, 409 F. App'x at 864. And a number of district courts have reemphasized this point. *See, e.g.*, *Huffman*, 2020 WL 6937441, at *7 (collecting cases); *Crawford v. Astrue*, No. 11-226-GFVT, 2012 WL 4498830, at *3 (E.D. Ky. Sept. 28, 2012) (" '[C]onservative' treatment is the norm for fibromyalgia."). Thus, while generally under 20 C.F.R. § 404.1529 and SSR 16-3p consideration of the type of a treatment a claimant receives is appropriate, the ALJ's emphasis on it here yet again suggests that he did not account for the nature of fibromyalgia in assessing Claimant's RFC. And the ALJ's discussion lacks citation to any other pertinent factor to support his rejection of Claimant's statements regarding her limitation. In particular, Claimant argued in

16

her brief that the ALJ erred by not discussing her daily activities. The Court agrees. The ALJ did not reference Claimant's daily activities at all in his discussion of her RFC. While as noted above, the ALJ is not required to discuss all the relevant 20 C.F.R. § 404.1529(c)(3) factors in his or her opinion, SSR 16-3p does require enough of an articulation to give a reviewer an understanding of the ALJ's conclusion. Given the irrelevance of the factors the ALJ did discuss to Claimant's fibromyalgia, the ALJ's articulation is insufficient. The Commissioner pointed out that the ALJ did discuss some of the Claimant's daily activities in his step two analysis in his consideration of the Paragraph B criteria, but the discussion he did provide was minimal and in no way substantiated his RFC determination at the later step. For example, he noted that Claimant maintained a relationship with her husband and family, texts with others, goes shopping, plays Minecraft, can do chores, can cook, and can take her mother to doctor's appointments. (R. at 22-23.) But not only is the relationship between some of these activities and Claimant's ability to maintain full time employment in doubt, the ALJ's discussion ignores qualifications on those daily activities contained within the record. For example, Claimant testified specifically at the hearing about being able to perform certain chores and not others, not being able to cook, and only being able to drive her mother when she was not experiencing brain fog. These qualifications go unaddressed by the ALJ's decision, and, as such, his step two discussion is not a substitute for a better articulation of why he rejected Claimant's statements regarding her symptoms at step four.

These errors are not harmless. Claimant consistently reported chronic fatigue, weakness, and brain fog associated with her fibromyalgia throughout the longitudinal medical record. (*Id.* at 395-96, 371, 373, 379, 389, 422, 503-04, 588, 670, 690, 692, 696, 790.) She also consistently reported pain and other symptoms even in the face of the objective findings and imaging studies cited by the ALJ. (*Id.* at 373-74, 379-84, 389-94, 493-533, 551-87, 588-97, 670-76, 696-702.)

She testified at her hearing that her treatment was conservative because no one could give her treatment that helped her and did not conflict with her depression medication. None of these factors were adequately accounted for by the ALJ in his decision. And while his decision was not unprofessional or unduly critical of Claimant, given the number of irrelevant factors he relied upon, it left the impression that he simply did not believe Claimant without any valid basis for that conclusion. The ALJ's emphasis on objective findings, imaging records, and conservative treatment simply does not provide a sufficient explanation for why Claimant retains the RFC in the ALJ's decision in light of the limitations caused by her fibromyalgia.

For all these reasons, the Court concludes that the ALJ's determination of Claimant's RFC is not based upon substantial evidence.

### III. CONCLUSION AND ORDER

For the reasons set forth above, IT IS HEREBY ORDERED that the final decision of the Commissioner is **REVERSED** and that this matter is **REMANDED**, pursuant to sentence four of 42 § U.S.C. 405(g), to the Commissioner to conduct additional proceedings to remedy the above-identified defects in the original proceedings. A final judgment will be entered separately.

Colin H Lindsay, Magistrate Judge
United States District Court

cc: Counsel of Record
March 25, 2025